Yolanda Huang (State Bar No. 104543)
LAW OFFICES OF YOLANDA HUANG
P.O. Box 5475
Berkeley, CA 94705
Telephone:     (510) 329-2140
Facsimile:      (510) 580-9410
E-Mail:         yolanda@yhuanglaw.com

Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:      (916) 447-8336
E-Mail:         mark@markmerin.com
                paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF LEONARD BROWN,
BLONDELL BROWN, and ANGELO BOSTICH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF LEONARD BROWN, BLONDELL BROWN, and ANGELO BOSTICH, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, INC., and DOE 1 to 20, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** <br><br> **DEMAND FOR JURY TRIAL** |

1

**INTRODUCTION**

LEONARD BROWN was a documented mental health inmate in the custody of the ALAMEDA COUNTY SHERIFF'S OFFICE at the Santa Rita Jail, under the care and supervision of jail staff, mental health staff from the ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, and contracted medical staff from CALIFORNIA FORENSIC MEDICAL GROUP (also known as or doing business as WELLPATH, INC.). The jail, mental health, and medical services staff ignored LEONARD BROWN's medical and mental health conditions; refused to provide him with necessary medications; denied him necessary mental health treatment; ignored his repeated requests for service; and left him unsupervised, resulting in his death by suicide.

LEONARD BROWN's family and loved ones contacted the jail and were falsely informed that LEONARD BROWN had been "released" from the jail. In fact, LEONARD BROWN had been transported to a hospital on life-support and found "braindead." LEONARD BROWN's family were only contacted and later learned of his status when the hospital sought permission to harvest his organs. As a result, LEONARD BROWN's family and loved ones never had an opportunity to say goodbye.

**JURISDICTION & VENUE**

1.      This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has supplemental jurisdiction of the state claims under 28 U.S.C. § 1367.

2.      Venue is proper in the United State District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Northern District of California and because many of the acts and/or omissions described herein occurred in the Northern District of California.

3.      Intradistrict venue is proper in the San Francisco/Oakland Division of the Northern District of California pursuant to N.D. Cal. Civ. L.R. 3-2(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Alameda, California.

**EXHAUSTION**

4.      On June 7, 2022, the ESTATE OF LEONARD BROWN, BLONDELL BROWN, and

2

ANGELO BOSTICH submitted, and the COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE received, a substantially compliant government claim relating to the claims asserted in this action.

5.      The COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE failed or refused to act on the claim within 45 days after the claim had been presented. *See* Cal. Gov. Code § 912.4(c).

## PARTIES

6.      Plaintiff ESTATE OF LEONARD BROWN appears by and through real-party-in-interest Plaintiff BLONDELL BROWN, the biological mother of LEONARD BROWN, who brings this action pursuant to Cal. Code Civ. Proc. § 377.30. Plaintiff BLONDELL BROWN brings this action as the successor-in-interest on behalf of the decedent LEONARD BROWN. Plaintiff BLONDELL BROWN's declaration regarding her status as LEONARD BROWN's successor-in-interest, pursuant to Cal. Code Civ. Proc. § 377.32, is attached hereto.

7.      Plaintiff BLONDELL BROWN (née RATCLIFF) was born and raised and is a resident of the State of California, County of Alameda. Plaintiff BLONDELL BROWN brings this action: (a) on behalf of Plaintiff ESTATE OF LEONARD BROWN, in her representative capacity as the successor-in-interest; and (b) on behalf of herself, in her individual capacity. Plaintiff BLONDELL BROWN is the biological mother of LEONARD BROWN and the heir to his estate, under California law.

8.      ANGELO BOSTICH was born and raised and is a resident of the State of California, County of Alameda. ANGELO BOSTICH is the older brother of LEONARD BROWN. As children, they spent much of their time together. Where one went, the other accompanied. ANGELO BOSTICH and LEONARD BROWN were exceptionally close. They lived together and, most recently, ANGELO BOSTICH, LEONARD BROWN, and BLONDELL BROWN shared a common address and a common home. Wherever ANGELO BOSTICH was living, there was always an open door for LEONARD BROWN.

9.      Defendant COUNTY OF ALAMEDA is a "public entity" within the definition of Cal. Gov. Code § 811.2.

10.      Defendant ALAMEDA COUNTY SHERIFF'S OFFICE is a "public entity" within the

3

definition of Cal. Gov. Code § 811.2. Defendant ALAMEDA COUNTY SHERIFF'S OFFICE operates jail facilities in the County of Alameda, including the Santa Rita Jail.

11.     Defendant GREGORY AHERN is, and at all times material herein was, a law enforcement officer and the Sheriff-Coroner for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, acting within the scope of that employment. Defendant GREGORY AHERN is sued in his individual capacity.

12.     Defendant ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES is a "public entity" within the definition of Cal. Gov. Code § 811.2. Defendant ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES is responsible for providing mental health care to inmates at the Santa Rita Jail.

13.     CALIFORNIA FORENSIC MEDICAL GROUP is, and at all times material herein was, owned and controlled by H.I.G. CAPITAL. Defendant CALIFORNIA FORENSIC MEDICAL GROUP is also-known-as CORRECTIONAL MEDICAL GROUP COMPANIES INC. and is doing-business-as WELLPATH, INC. or is also-known-as WELLPATH, INC. Defendant CALIFORNIA FORENSIC MEDICAL GROUP has a business address in the State of California, County of Monterey and County of San Diego; and, since October 1, 2018, in State of Tennessee, County of Davidson. Defendant WELLPATH, INC. is a Delaware Corporation with a business address in the County of San Diego. Defendant CALIFORNIA FORENSIC MEDICAL GROUP/WELLPATH, INC. is/are California corporations licensed to and doing business in the State of California, as a contracted provider of medical services to Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and GREGORY AHERN, including the jail facilities which they operate. Defendant WELLPATH, INC., CALIFORNIA FORENSIC MEDICAL GROUP, and CORRECTIONAL MEDICAL GROUP COMPANIES INC. are hereinafter collectively referred to as Defendant CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH.

14.     Defendants DOE 1 to 20 are and/or were agents, contractors, and/or employees of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH and acted within the scope of that agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by fictitious names, where their true and correct identities and names

4

will be substituted when ascertained.

## **GENERAL ALLEGATIONS**

15.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

16.     LEONARD BROWN was a 37-year-old man, prior to his death on March 15, 2022.

17.     Prior to his death, LEONARD BROWN cohabitated and shared a close relationship and special bond with his mother and his brother ANGELO. Although, LEONARD BROWN was incarcerated, all three, LEONARD BROWN, BLONDELL BROWN and ANGELO BOSTICH considered LEONARD BROWN's true home to be the one he shared with his mother's and his brother ANGELO BOSTICH. Plaintiff BLONDELL BROWN relationship with LEONARD BROWN was a loving mother-son relationship, closer than most. ANGELO BOSTICH and LEONARD BROWN had a loving fraternal relationship, closer than most.

18.     LEONARD BROWN suffered from diagnosed mental disabilities, including paranoid schizophrenia. LEONARD BROWN's disability required hospitalizations and treatment on occasions prior to his death, and substantially limited one or more major life activities, at all times material herein, including his ability to care for himself, concentrate, think, and communicate.

19.     For the four years preceding his death, LEONARD BROWN was prescribed medications for his mental disability.

20.     In the fall of 2021, LEONARD BROWN discontinued taking his medications and his mental health disabilities were exacerbated.

21.     On September 10, 2021, LEONARD BROWN was arrested and booked into the custody of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and GREGORY AHERN. LEONARD BROWN was held in custody at the Santa Rita Jail.

22.     Upon intake, Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and GREGORY AHERN, including their jail staff, Defendants DOE 1 to 20, were informed that LEONARD BROWN had a diagnosis of paranoid schizophrenia and had previously been hospitalized at John George Psychiatric Hospital.

23.     LEONARD BROWN's jail intake notes document that he was anxious and talking to

himself during intake and that he had previously been on Remeron, a medication prescribed for anxiety.

24.     LEONARD BROWN was placed into a "safety cell" by jail staff. The safety cell consisted of an empty concrete room with no furniture, no water, and only a hole in the ground for urination and defecation.

25.     LEONARD BROWN was placed naked inside of the safety cell, with a safety blanket and smock to cover his naked body.

26.     LEONARD BROWN was not provided with medication for six days following his intake.

27.     LEONARD BROWN was kept isolated and had little-to-no social contact with other persons outside his cell, had little-to-no access to programming, minimal out-of-cell time, no access to the outside, and no meaningful access to medical or mental health treatment, while held in the safety cell.

28.     Defendant WELLPATH, INC., including its medical staff, Defendants DOE 1 to 20, sometimes offered medication and asked LEONARD BROWN whether he had any suicidal ideation.

29.     LEONARD BROWN occasionally refused medication and told medical staff that the medications "don't help me."

30.     Defendant ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, including its mental health staff, Defendants DOE 1 to 20, were "informed" or "alerted" by medical staff regarding LEONARD BROWN's medical and mental health status.

31.     Defendant ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES's mental health staff offered little-if-any mental health treatment, including only brief "appointments" lasting a few minutes.

32.     On October 7, 2021, LEONARD BROWN informed jail staff and medical staff that he felt "depressed."

33.     On October 22, 2022, LEONARD BROWN told staff he had "nothing to live for" and attempted suicide by wrapping a sheet around his neck which he tied to a bunk.

34.     LEONARD BROWN was sent by staff to ValleyCare Hospital, and then to John George Psychiatric Hospital.

35.     Two days later, LEONARD BROWN was returned to the Santa Rita Jail.

36.     LEONARD BROWN was placed in Intensive Observation Log ("IOL") housing, a form

6

of isolation housing, at the Santa Rita Jail. IOL housing is the mental health component of solitary confinement in the Santa Rita Jail.

37.     LEONARD BROWN was provided no therapy, no opportunity to socialize or develop social relations, and no opportunity for mental health services or programs.

38.     Four days later, LEONARD BROWN was returned to safety cell housing by staff. Again, LEONARD BROWN was placed inside the cell, naked, with only a safety blanket and a limited smock to cover his naked body and slept on the concrete floor.

39.     From October 26 through November 30, 2021, LEONARD BROWN was housed alternately in a safety cell or IOL housing.

40.     LEONARD BROWN informed family and friends that the jail was not providing him with the medications he needed and that the medications the jail was providing did not work and were not helping him.

41.     In mid-February 2022, LEONARD BROWN informed medical staff that he was embarking on a hunger strike, in order to starve himself to death, because he wanted to die.

42.     On February 25, 2022, medical staff noted that LEONARD BROWN's appearance was "unkempt," for the first time.

43.     Defendants DOE 1 to 20 decreased the frequency of medical checks on LEONARD BROWN, despite signs that LEONARD BROWN's mental health was deteriorating. After February 25, 2022, the next check by medical staff on LEONARD BROWN was three days later on February 28, 2022; then, on March 2, 2022; then, on March 4, 2022; and then, on either March 6 or 7, 2022.

44.     On information and belief: On or about March 9, 2022, LEONARD BROWN attempted to commit suicide in his cell, using a ligature around his neck.

45.     On March 9, 2022, a final medical check on LEONARD BROWN was conducted and his medical records note that he was found not conscious and not breathing.

46.     LEONARD BROWN was administered CPR and NARCAN and transported to ValleyCare Hospital.

47.     LEONARD BROWN's family and friends contacted the jail in the following days, seeking to come visit LEONARD BROWN. The jail staff informed them that LEONARD BROWN had

7

been "released" from the jail. The jail staff and failed to inform them that LEONARD BROWN had been transported to a hospital in a coma.

48.     LEONARD BROWN's family and friends were confused and concerned why LEONARD BROWN had not returned home, after his "release" from jail. LEONARD BROWN's friends and family, including Plaintiff BLONDELL BROWN, repeatedly phoned the jail for more information but none was provided. ANGELO BOSTICH was exceedingly concerned that if LEONARD BROWN had been "released" that he had not immediately contacted and informed ANGELO BOSTICH, and had not come home. For this reason, BLONDELL BROWN and ANGELO BOSTICH were exceedingly concerned that something had happened to LEONARD BROWN, because if he had been "released", LEONARD BROWN would have immediately contacted his mother and his oldest brother.

49.     On or about March 15, 2022, LEONARD BROWN was determined to be "braindead" by medical staff at the hospital.

50.     On or about March 16, 2022, the hospital contacted Plaintiff BLONDELL BROWN, advising her that LEONARD BROWN was in the hospital and urged her to see him.

51.     Plaintiff BLONDELL BROWN, ANGELO BOSTICH and others visited LEONARD BROWN in the hospital. They were informed for the first time that LEONARD BROWN had attempted to commit suicide. They were shocked and very upset to learn that LEONARD BROWN was not conscious and was on life-support. The hospital sought permission to harvest LEONARD BROWN's organs.

52.     In public statements, Defendant ALAMEDA COUNTY SHERIFF'S OFFICE's spokesman, Lieutenant Ray Kelly, falsely stated that LEONARD BROWN had been "released" into federal custody and that the custody staff and medical staff at the Santa Rita Jail had "saved" LEONARD BROWN's life.

53.     At present, Plaintiffs BLONDELL BROWN and ANGELO BOSTICH are concerned because they have a loved one currently in custody at Santa Rita Jail. They are concerned that the jail will not provide accurate information regarding the physical condition of their loved one. They are concerned that if this loved one is hospitalized, or otherwise injured, they will not only, not be informed, but will be mis-informed regarding this loved one's situation, physical health, and physical location.

## POLICY AND CUSTOM ALLEGATIONS

54.     Defendant GREGORY AHERN, acting as Sheriff, is and was a final policymaking authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, including as it relates to the maintenance and operation of jail and detention facilities, such as the Santa Rita Jail; training, supervision, and discipline of law enforcement officers acting under his command; and the safekeeping of inmates/prisoners in his custody. *See* Cal. Const. art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610. Defendant GREGORY AHERN was employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as a Deputy Sheriff in 1980; was promoted to Sergeant in 1986; was promoted to Lieutenant in 2000; was promoted to Captain in 2003; was promoted to Commander in 2005; was promoted to Assistant Sheriff in 2006; and was elected and became Sheriff on January 8, 2007.

55.     Defendants DOE 11 to 20 are/were policymaking authorities for Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, and CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH based on a delegation of authority, including as it relates to the maintenance and operation of jail and detention facilities, such as the Santa Rita Jail; training, supervision, and discipline of law enforcement officers acting under their command; and the safekeeping, medical treatment, and/or mental health treatment of inmates in custody.

### Failure to Train, Supervise, and Discipline

56.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20 maintain a policy or custom whereby their personnel fail to provide necessary medical treatment to inmates housed at the Santa Rita Jail; and/or fail to transfer inmates housed at the Santa Rita Jail to medical facilities where necessary medical treatment is available, where it is not available in the Santa Rita Jail. Specifically, inadequate polices, customs, training, supervision, and discipline of jail staff, medical staff, and mental health staff at the Santa Rita Jail results in the following deficiencies:

(a)     Failure to provide inmates with access to necessary and appropriate medical and

9

mental health care;

      (b)     Failure to conduct appropriate and complete suicide/risk assessments;

      (c)     Failure to create and implement appropriate medical and mental health treatment plans;

      (d)     Utilization of isolation cells and excessive lockdown which contributes to and exacerbates mental illness, including safety cells and IOL housing;

      (e)     Inadequate and lack of meaningful monitoring of inmates in isolation units or on continual lockdown, which places inmates at risk and contributes to mental illness and risk of suicide;

      (f)     Failure promptly to evaluate and transfer inmates to a hospital or facility providing appropriate and necessary medical and mental health care, where an inmate is gravely disabled, at risk of serious harm, and/or suicidal;

      (g)     Failure to take reasonable and necessary action to reduce or to end harmful cumulative effects of prolonged isolation in solitary confinement in small, cramped and unsanitary cells, including the continued denial of opportunities for vocational, recreational, educational, and religious programming; necessary physical exercise; and social activity;

      (h)     Failure to provide inmates with necessary and required out-of-cell time for physical exercise and movement, in violation of Cal. Code Regs. tit. 15 § 1065;

      (i)     Failure to implement necessary and appropriate emergency treatment policies; and/or

      (j)     Failure to provide necessary and appropriate staffing and training at the Santa Rita Jail for the purpose of providing minimally-adequate medical and mental health treatment for seriously ill inmates.

57.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20's policies and customs fail to comply with the standards set forth by the National Commission on Correctional Health Care ("NCCHC").

58.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA

FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20 were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of deficient policies or customs because the inadequacies were so obvious and likely to result in violations of the rights of inmates housed at the Santa Rita Jail.

59.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20's inadequate policies, customs, training, and supervision proximately caused violations of the rights of inmates housed at the Santa Rita Jail, including LEONARD BROWN.

**Deliberate Indifference**

60.     Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE have a longstanding and well-established custom of subjecting persons held in their detention facilities, including the Santa Rita Jail, to "shocking and debasing conditions" unfit "for man or beast as a matter of law." *Brenneman v. Madigan*, 343 F. Supp. 128, 133 (N.D. Cal. 1972).

61.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20, maintain a policy or custom of inadequate supervision and reporting; medical care and treatment; and/or mental health care and treatment, resulting in the violation of constitutional rights of persons held in their detention facilities, including the Santa Rita Jail. For example:

(a)     A pattern and practice of improper and inadequate medical treatment for inmates—in particular, inmates known to have a mental health condition—including depriving inmates of necessary medical treatment and medications and excessive and inappropriate confinement in isolation and solitary conditions;

(b)     A pattern and practice of refusing to adequately investigate or recognize violations of policy and rights;

(c)     A pattern and practice refusing to impose appropriate discipline and/or re-training, in circumstances where violations of policy and rights are identified;

11

1    (d)    A pattern and practice of covering-up violations of policy and rights;

2    (e)    A pattern and practice of allowing, tolerating, and/or encouraging a code of silence

3    among Santa Rita Jail personnel; and/or

4    (f)    A pattern and practice of failing to have and enforce necessary, appropriate, and

5    lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct,

6    despite an obvious need for such policies, procedures, and training programs.

7    62.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

8    GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, and DOE 11 to 20's

9    policy or custom is demonstrated by various sources, including:

10    (a)    Consent Decree: On February 7, 2022, a consent decree was approved and entered

11    against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

12    GREGORY AHERN, and ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, relating to a class

13    action alleging that officials in the Santa Rita Jail subject "individuals with mental health diagnoses

14    and/or other psychiatric disabilities" to "cruel and unusual use of isolation" as well as failing to respect

15    their due process rights by not providing "adequate mental health care" and "reasonable

16    accommodations" to those with mental disabilities. (*Babu v. County of Alameda*, U.S. District Court,

17    Northern District of California, Case No. 5:18-cv-07677-NC, ECF No. 436 (N.D. Cal. Feb. 7, 2022).)

18    The consent decree requires the jail: (a) to ensure inmates receive adequate mental health care, including

19    adequate staffing, establishing levels of care, creating treatment plans for eligible individuals, providing

20    treatment services, and implementing Therapeutic Housing Unit(s); (b) to ensure inmates are offered

21    adequate out-of-cell time each day; (c) to take measures to prevent suicide and self-harm, including

22    severely curtailing the use of safety cells and limiting placement in them to no more than 8 hours, and

23    implementing procedures and assessments to identify individuals at risk upon arrival; (d) to ensure that

24    inmates with mental health disabilities can access programs and services; (e) to implement a new

25    classification system that limits the use and duration of restrictive housing; (f) to change use-of-force

26    policies and procedures and train staff; and (g) to appoint an ombudsperson, designate an ADA

27    coordinator, and set up an Inmate Advisory Council. *See* <https://rbgg.com/santa-rita-consent-decree/>.

28    (b)    Grand Jury Report: On June 6, 2022, the 2021–2022 Alameda County Grand Jury

12

1    Final Report was issued. <http://grandjury.acgov.org/grandjury-assets/docs/2021-

2    2022/Grand.Jury.Report.2022.for.ITD.Web.pdf>. Therein, the Alameda County Grand Jury recognized a

3    "multiple-year pattern of lawsuits concerning conditions" and identified numerous issues with the Santa

4    Rita Jail, including "[s]erious safety violations, inadequate medical services and poor sanitation" which

5    "warrant urgent attention." The grand jury's investigation included extensive interviews and reviews of

6    thousands of pages of records and made nearly 30 recommendations for improving conditions at the

7    Santa Rita Jail. See Lakshmi Sarah & Matthew Green, *Grand Jury: Major Health and Safety Violations*

8    *at Santa Rita Jail Require 'Urgent Attention'* (June 30, 2022), available at:

9    <https://www.kqed.org/news/11918230/grand-jury-major-health-and-safety-violations-at-santa-rita-jail-

10   require-urgent-attention>.

11            (c)    <u>DOJ Report</u>: On April 22, 2021, the U.S. Department of Justice, Civil Rights

12   Division, issued an "Investigation of Alameda County, John George Psychiatric Hospital, and Santa Rita

13   Jail." <https://www.justice.gov/crt/case-document/file/1388891/download>. Therein, the DOJ concluded

14   that there was "reasonable cause" that Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY

15   SHERIFF'S OFFICE, and ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES violated inmates'

16   civil rights by failing to provide proper mental health services, especially in the Santa Rita Jail where 19

17   people have committed suicide since 2014. *See*, *e.g.*, Robert Jablon, *Feds Say Santa Rita Jail Violates*

18   *Rights of Mentally Ill* (April 24, 2021), available at: <https://www.nbcbayarea.com/news/local/east-

19   bay/feds-say-santa-rita-jail-violates-rights-of-mentally-ill/2527370/>; Lisa Fernandez, *DOJ finds mental*

20   *health care, overuse of isolation at Santa Rita Jail unconstitutional* (April 22, 2021), available at:

21   <https://www.ktvu.com/news/doj-finds-mental-health-care-overuse-of-isolation-at-santa-rita-jail-

22   unconstitutional>.

23            (d)    <u>In-Custody Deaths</u>: "Santa Rita Jail … has the highest number of inmate deaths in

24   the Bay Area, and has an even higher jail death rate than Los Angeles County, which has the largest jail

25   system in the country. . . [A]t least 45 inmates have died since Jan. 1, 2014, and of that number, at least

26   17 people committed suicide. Of the suicides, 12 people were held in some form of isolation." Lisa

27   Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019,

28   *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-

13

died-at-santa-rita-jail-in-the-last-five-years>. For example:

(i)      Jonas Park died by suicide while incarcerated at the Santa Rita Jail on February 9, 2022. Jonas Park was arrested and booked into the jail on February 4, 2022, exhibiting symptoms of withdrawal. Jonas Park unsuccessfully attempted suicide by a ligature tied to a bunk. Later, Jonas Park requested and received a bedsheet which, within 16 minutes, he was able to wrap around his neck and successfully commit suicide. Joe Dworetzky, *County sued over another suicide at Santa Rita Jail* (Mar. 27, 2022), available at: <https://www.pleasantonweekly.com/news/2022/03/27/county-sued-over-another-suicide-at-santa-rita-jail>. A civil rights lawsuit was filed. (*K.P. v. County of Alameda*, U.S. District Court, Northern District of California, Case No. 4:22-cv-01817-DMR.) The case remains pending.

(ii)     Lee Anderson died of cardiopulmonary arrest while incarcerated at the Santa Rita Jail on May 16, 2021. Lee Anderson was found unresponsive in her cell, after obtaining access to drugs which were smuggled into the jail during the booking process, due to the chronically unsafe conditions at the Sant Rita Jail. Lisa Fernandez, *Family sues Santa Rita Jail after woman dies of drug overdose* (March 17, 2022), available at: <https://www.ktvu.com/news/family-sues-santa-rita-jail-after-woman-dies-in-custody-of-drug-overdose>. A civil rights lawsuit was filed. (*Anderson v. County of Alameda*, U.S. District Court, Northern District of California, Case No. 3:22-cv-01577-JSC.) The case remains pending.

(iii)    Christopher Crosby died by suicide while incarcerated at the Santa Rita Jail on December 4, 2019. Christopher Crosby was booked into the Santa Rita Jail in February 2018 and classified as a suicide risk. The jail and mental health staff failed properly to monitor Christopher Crosby and permitted him access to a "plastic bag," which he was able to place over his head suffocate himself to death. Lisa Fernandez, *Deadly year at Santa Rita ends with 10 inmate deaths* (Jan. 2, 2020), available at: <https://www.ktvu.com/news/deadly-year-at-santa-rita-ends-with-10-inmate-deaths>. A civil rights lawsuit was filed. (*Crosby v. County of Alameda*, U.S. District Court, Northern District of California, Case No. 3:20-cv-08529-MMC.) The case was settled pretrial.

(iv)     Maurice Monk died while incarcerated at the Santa Rita Jail on November 15, 2021. Maurice Monk suffered from severe conditions, including diabetes, high blood pressure, and

14

schizophrenia. The jail and medical staff failed to provide Maurice Monk sufficient medical care for his conditions and placed him in a solitary cell. Maurice Monk's sister attempted to bring his pills to the jail but staff refused to accept them, instructing her to send an email containing the prescription information to the jail. The emails were filtered to a "junk" inbox and were never received. Finally, the jail instructed her to fax the prescription information. Before she could so do, she was informed that Maurice Monk was dead. Maurice Monk was deprived his necessary medications and missed critical medical appointments while held in jail and was subsequently found dead in his cell. Lisa Fernandez & Cristina Rendon, *Security guard arrested after not wearing mask on bus dies in Santa Rita Jail* (Nov. 18, 2021), available at: <https://www.ktvu.com/news/security-guard-arrested-after-not-wearing-mask-on-bus-dies-in-santa-rita-jail>. A civil rights lawsuit was filed. (*Estate of Maurice Monk v. Alameda County*, U.S. District Court, Northern District of California, Case No. 3:22-cv-04037-TSH.) The case remains pending.

(v)     Raymond Reyes Jr. died by suicide while incarcerated at the Santa Rita Jail on July 24, 2019. Raymond Reyes Jr. expressed suicidal ideations to jail staff during booking but he was not placed on suicide watch. Raymond Reyes Jr. was permitted to ingest a lethal dose of methamphetamine while under jail supervision. The staff attempted to revive Raymond Reyes Jr. with naloxone, a drug used to treat heroin overdose—but not methamphetamine overdose. Lisa Fernandez, Simone Aponte & Alex Savidge, Death rate at Santa Rita exceeds nation's largest jail system as critics call for reform (Oct. 1, 2019), available at: <https://www.ktvu.com/news/death-rate-at-santa-rita-exceeds-nations-largest-jail-system-as-critics-call-for-reform>. A civil rights lawsuit was filed. (*Reyes v. County of Alameda*, U.S. District Court, Northern District of California, Case No. 4:20-cv-03971-DMR.) The case was settled pretrial.

(vi)     Christopher Thomas died by attempted suicide while incarcerated at the Santa Rita Jail on July 6, 2019. Christopher Thomas expressed suicidal ideations to jail staff but he was not placed on suicide watch. Christopher Thomas was permitted to hang himself with a bedsheet around his neck. Christopher Thomas was found hanging by jail staff on June 30, 2019, and transported to a hospital where he was diagnosed with an anoxic brain injury and later died on July 6, 2019. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-

15

died-at-santa-rita-jail-in-the-last-five-years>.

       (vii)     Christian Madrigal died by suicide while incarcerated at the Santa Rita Jail on June 15, 2019. Christian Madrigal was arrested after acting "erratically" and "aggressively" after he ingested psychedelic mushrooms. Christian Madrigal was booked into Santa Rita Jail, where a lieutenant ordered him to be chained to a door. Christian Madrigal was left chained to the door for hours, and when deputies returned to check on him, he had hanged himself with the chains they provided him. Lisa Fernandez, *Alameda County to pay $5M to Fremont family of young man chained to Santa Rita Jail door* (Oct. 22, 2020, *updated* Nov. 3, 2020), available at: <https://www.ktvu.com/news/alameda-county-to-pay-5m-to-fremont-family-of-young-man-chained-to-santa-rita-jail-door>. A civil rights lawsuit was filed. (*Jaime v. County of Alameda*, U.S. District Court, Northern District of California, Case No. 3:19-cv-08367-RS.) The case was settled pretrial for $5,000,000.

       (viii)     Hector Hernandez Jr. died of pneumonia while incarcerated at the Santa Rita Jail on June 5, 2019. Hector Hernandez Jr. had been incarcerated for two months prior to his death, during which time jail and medical staff ignored and failed to conduct mandated safety checks on Hector Hernandez Jr., as his physical and mental health deteriorated until he was found dead in his cell. Brooks Jarosz , Lisa Fernandez & Simone Aponte, *Santa Rita Jail's medical provider is target of lawsuits, complaints about lack of care* (May 5, 2021), available at: <https://www.ktvu.com/news/santa-rita-jails-medical-provider-is-target-of-lawsuits-complaints-about-lack-of-care>. A civil rights lawsuit was filed. (*Hernandez v. County of Alameda*, U.S. District Court, Northern District of California, Case No. 4:20-cv-02884-HSG.) The case remains pending.

       (ix)     Logan Masterson died by suicide while incarcerated at the Santa Rita Jail on April 4, 2018. Logan Masterson was arrested and booked into the jail on April 4, 2018, where he was initially placed in a safety cell on suicide watch. Logan Masterson's housing on suicide watch was discontinued and he was moved to an isolation cell. Logan Masterson remained in the isolation cell until he was permitted to hang himself to death inside of his cell on April 6, 2018. Erin Allday & Megan Cassidy, *Family of man who died by suicide in Alameda County jail files lawsuit* (Mar. 29, 2019), available at: <https://www.sfchronicle.com/bayarea/article/Family-of-man-who-died-by-suicide-in-Alameda-13727587.php>. A civil rights lawsuit was filed. (*Masterson v. County of Alameda*, U.S.

District Court, Northern District of California, Case No. 4:19-cv-01625-PJH.) The case was settled pretrial.

(x)     Edwin Villalta died by suicide while incarcerated at the Santa Rita Jail on November 28, 2017. Edwin Villalta entered the jail with diagnoses of anxiety and PTSD and was assigned to segregation housing and held in isolation. Edwin Villalta expressed feelings of depression but medical staff failed to provide necessary medications. Edwin Villalta was found dead in his cell during a routine cell check, after hanging himself from a bunk with a blanket around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(xi)     Miguel Gomez died by suicide while incarcerated at the Santa Rita Jail on October 26, 2017. Miguel Gomez was single-celled in the jail's protective custody housing. Miguel Gomez expressed suicidal ideations which were known to jail staff. Miguel Gomez was found hanging in his cell with bedsheets around his neck on October 23, 2027. Miguel Gomez was transported to a hospital where he died three days later. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(xii)     Barry Heisner Jr. died by suicide while incarcerated at the Santa Rita Jail on October 30, 2016. Barry Heisner Jr. was found hanging in his cell with bedsheets around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(xiii)     Balvir Singh died by suicide while incarcerated at the Santa Rita Jail on July 15, 2016. Balvir Singh was a mental health inmate subject to special housing, and expressed suicidal ideations to jail staff. Balvir Singh was found hanging in his cell with bedsheets around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

17

(xiv)      John Bonardi died by suicide while incarcerated at the Santa Rita Jail on December 10, 2015. John Bonardi was housed in the jail's protective custody. John Bonardi was found hanging in his cell with bedsheets around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(xv)      Christopher Angulo died by suicide while incarcerated at the Santa Rita Jail on June 19, 2015. Christopher Angulo had documented mental health issues. Christopher Angulo cut his right wrist and hemorrhaged to death before being discovered dead by jail staff. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(xvi)      Michael Brown died by suicide while incarcerated at the Santa Rita Jail on April 4, 2015. Michael Brown was assigned to segregation housing and held in isolation, without a documented explanation. Michael Brown was found hanging in his cell with bedsheets around his neck. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>. A civil rights lawsuit was filed. The case was settled pretrial for $200,000. Scott Morris, *The most dangerous place in Alameda County* (May 7, 2019), available at: <https://www.oaklandreporter.org/2019/05/the-most-dangerous-place-in-alameda-county.html

(xvii)      Gary Oldham died by suicide while incarcerated at the Santa Rita Jail on March 3, 2015. Gary Oldham was subject to "neurochecks" by staff and was required to sleep on a mattress on the floor "for safety." Gary Oldham was found hanging in his cell with bedsheets around his neck on February 21, 2015. Gary Oldham was transported to a hospital where he died several days later. Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>. A civil rights lawsuit was filed. Lucas Guilkey,

*Nearly one third of Glenn Dyer prisoners wrap up hunger strike* (Oct. 27, 2017), available at:

<https://oaklandnorth.net/2017/10/27/nearly-one-third-of-glenn-dyer-prisoners-wrap-up-hunger-strike/>.

(xviii)    Dennis Jimenez died by suicide while incarcerated at the Santa Rita Jail on September 1, 2012. Dennis Jimenez unsuccessfully attempted suicide by cutting his wrists on August 9, 2012. Dennis Jimenez again attempted suicide by hanging himself with a bedsheet three days later, and was pronounced dead on the way to the hospital. Kristofer Noceda, Inmate Commits Suicide at Santa Rita Jail (Sep 4. 2012), available at: <https://patch.com/california/livermore/inmate-commits-suicide-at-santa-rita-jail>. A civil rights lawsuit was filed. (*Jimenez v. County of Alameda*, U.S. District Court, Northern District of California, Case No. 3:13-cv-04620-CRB.) The case was settled pretrial for $275,000.

63.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP, WELLPATH, INC., and DOE 11 to 20's policy or custom is demonstrated by various sources, including those identified above, in addition:

(a)    "[Defendant WELLPATH, INC.] has been sued nearly 500 times over the last five years across the country, according to an online review of lawsuits." Brooks Jarosz , Lisa Fernandez & Simone Aponte, Santa Rita Jail's medical provider is target of lawsuits, complaints about lack of care (May 5, 2021), available at: <https://www.ktvu.com/news/santa-rita-jails-medical-provider-is-target-of-lawsuits-complaints-about-lack-of-care>.

(b)    Defendant WELLPATH, INC. has "faced repeated complaints of inadequate mental healthcare." *Estate of Linda Miller v. County of Sutter*, U.S. District Court, Eastern District of California, Case No. 2:20-cv-00577-KJM-DMC, ECF No. 67 at 25 (E.D. Cal. Oct. 30, 2020) (citing *id*. ECF No. 40 ¶¶ 140–141, 145–152).

(c)    Defendant WELLPATH, INC. was subject to sanctions for refusing to respond to requests to "produce all DOCUMENTS REGARDING, REFERRING OR RELATING TO or showing reports, data, schedules, or analyses of in-custody deaths in facilities for which [Defendant WELLPATH, INC.], [Defendant CALIFORNIA FORENSIC MEDICAL GROUP], or any related or predecessor entity was contracted to provide medical and mental healthcare," where the court had compelled production "[a]pproximately seven months" prior. *D.M. v. County of Merced*, U.S. District Court, Eastern District of

19

COMPLAINT; DEMAND FOR JURY TRIAL
*Estate of Brown v. County of Alameda*, United States District Court, Northern District of California, Case No. _____

California, Case No. 1:20-cv-00409-JLT-SAB, ECF No. 69 (E.D. Cal. Mar. 9, 2022).

(d)     As of 2015, over a 10-year period, county jails contracting with Defendant CALIFORNIA FORENSIC MEDICAL GROUP had a rate of suicide and drug overdoses 50 percent higher than in other county jails in California, and at least three county grand juries had criticized its role in inmate deaths. Brad Branan, *California for-profit company faces allegations of inadequate inmate care* (Jan. 17, 2015), available at: <https://amp.sacbee.com/article7249637.html>.

(e)     In 2015, Defendant CALIFORNIA FORENSIC MEDICAL GROUP entered into a class action settlement which required it to address issues of inadequate medical and mental healthcare, inadequate staffing, and accommodations for disabled prisoners and serious safety problems at the Monterey County Jail. *Hernandez v. County of Monterey*, U.S. District Court, Northern District of California, Case No. 5:13-cv-02354-BLF, ECF No. 485 (N.D. Cal. May 15, 2015). Defendant CALIFORNIA FORENSIC MEDICAL GROUP failed completely to comply with the terms of the settlement, and the court issued an order compelling its compliance. *Id*. ECF No. 617 (N.D. Cal. Nov. 1, 2017).

64.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20's inadequate policies and customs proximately caused violations of the rights of inmates housed at the Santa Rita Jail, including LEONARD BROWN.

**Ratification**

65.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20 did not meaningfully discipline, re-train, or otherwise penalize any of the personnel under their command involved in the incidents described, including the numerous deaths of inmates at the Santa Rita Jail.

66.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20 are and/or were aware of the multiple

20

settlements, prior incidents, prior complaints, and prior deaths at the Santa Rita Jail, including those described above, yet continuously fail to take appropriate corrective action.

67.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20 routinely fail to hold subordinates accountable for violations of law and policies and/or acquiesced in the violations, creating an environment where personnel believe they can "get away with anything."

68.     Defendant GREGORY AHERN "has given Santa Rita an A grade" and, "[w]hile addressing complaints about the conditions at the jail, … said, 'I think we're the best big jail in the nation.'" Scott Morris, *The most dangerous place in Alameda County* (May 7, 2019), available at: <https://www.oaklandreporter.org/2019/05/the-most-dangerous-place-in-alameda-county.html>; *see also* Lisa Fernandez & Candice Nguyen, Women sue Santa Rita over humiliating treatment; sheriff says facility is "best big jail in nation" (Nov. 15, 2018), available at: <https://www.ktvu.com/news/women-sue-santa-rita-over-humiliating-treatment-sheriff-says-facility-is-best-big-jail-in-nation>.

69.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and GREGORY AHERN sometimes fail properly to report in-custody death incidents as an "in-custody death," where inmates sustain critical injuries while in-custody at the Santa Rita Jail and later die outside of the jail. *See* Lisa Fernandez, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years> (incorrectly disputing that Paul Lee, Michael Hermon, Christian Madrigal, and Christopher Thomas died "in custody," where the inmates sustained life-ending injuries in the Santa Rita Jail).

70.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and GREGORY AHERN falsely described and ratified the actions of Defendants DOE 1 to 20, including declaring through a spokesperson, Lieutenant Ray Kelly: "Deputies and medical staff intervened and saved [LEONARD BROWN's] life." Lisa Fernandez, *Man complains about not feeling well; dies after suicide attempt at Santa Rita Jail* (April 13, 2022), available at: <https://www.ktvu.com/news/man-complains-about-not-feeling-well-dies-after-suicide-attempt-at-santa-rita-jail>.

21

71.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIOR HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20's ratification of personnel's actions and inactions proximately caused violations of the rights of inmates housed at the Santa Rita Jail, including LEONARD BROWN.

## FIRST CLAIM

### Deliberate Indifference

### (U.S. Const. Amend. VIII / XIV; 42 U.S.C. § 1983)

72.     Plaintiff ESTATE OF LEONARD BROWN (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

73.     The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

74.     Defendants DOE 1 to 10 intentionally refused to provide LEONARD BROWN with necessary medical and/or mental health care or treatment, or refused to transfer LEONARD BROWN to a mental health facility that could provide such necessary care or treatment, putting LEONARD BROWN at substantial risk of suffering serious harm, and did not take reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, resulting in the violation of LEONARD BROWN's rights protected by the Eighth and/or Fourteenth Amendment to the U.S. Constitution.

75.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20 maintained policies or customs of action and inaction and knew or should have known that law enforcement officers under their command were inadequately trained, supervised, or disciplined resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy, resulting in the violation of LEONARD BROWN's rights protected by the Eighth and/or Fourteenth Amendment to the U.S. Constitution.

22

76.     Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

77.     LEONARD BROWN was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF LEONARD BROWN to receive compensatory damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20; and punitive damages against Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF LEONARD BROWN prays for relief as hereunder appears.

## SECOND CLAIM

### Rehabilitation Act

### (29 U.S.C. § 701, *et seq.*)

78.     Plaintiff ESTATE OF LEONARD BROWN (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, and CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

79.     The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

80.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES each qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. On information and belief: Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, and CALIFORNIA FORENSIC MEDICAL GROUP

23

receive federal financial assistance. LEONARD BROWN had a mental impairment that substantially limited one or more major life activities and had a record of such an impairment.

81.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20 failed reasonably to accommodate LEONARD BROWN's disability, where they could have provided a reasonable accommodation, including: (a) by providing LEONARD BROWN with necessary medical and mental health care or treatment; (b) by transferring LEONARD BROWN to a medical or mental health facility that could provide necessary care or treatment; and/or (c) by classifying and housing LEONARD BROWN based on his mental impairment, where he would receive adequate and necessary medical and mental health care, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

82.     LEONARD BROWN was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF LEONARD BROWN to receive nominal and compensatory damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, and CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF LEONARD BROWN prays for relief as hereunder appears.

### THIRD CLAIM

### Americans with Disabilities Act

### (42 U.S.C. § 12101, *et seq*.)

83.     Plaintiff ESTATE OF LEONARD BROWN (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, and CALIFORNIA

24

FORENSIC MEDICAL GROUP.

84.     The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

85.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES each qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. LEONARD BROWN had a mental impairment that substantially limited one or more major life activities and had a record of such an impairment.

86.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20 failed reasonably to accommodate LEONARD BROWN's disability, where they could have provided a reasonable accommodation, including: (a) by providing LEONARD BROWN with necessary medical and mental health care or treatment; (b) by transferring LEONARD BROWN to a medical or mental health facility that could provide necessary care or treatment; and/or (c) by classifying and housing LEONARD BROWN based on his mental impairment, where he would receive adequate and necessary medical and mental health care, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

87.     LEONARD BROWN was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF LEONARD BROWN to receive nominal and compensatory damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, and CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF LEONARD BROWN prays for relief as hereunder appears.

**FOURTH CLAIM**

**Unwarranted Interference With Familial Association**

**(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

88.     Plaintiff BLONDELL BROWN asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

89.     The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

90.     Plaintiff BLONDELL BROWN shared a close relationship and special bond with LEONARD BROWN, her biological son, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a close familial relationship.

91.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20 caused the termination of and interference with Plaintiff BLONDELL BROWN's familial relationship with LEONARD BROWN, in the violation of constitutional rights protected by the Fourteenth Amendment to the U.S. Constitution.

92.     Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

93.     Plaintiff BLONDELL BROWN was injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions, entitling her to receive compensatory damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20; and punitive damages against Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL

26

1   GROUP-WELLPATH, and DOE 1 to 20.

2   　　　WHEREFORE, Plaintiff BLONDELL BROWN prays for relief as hereunder appears.

3   **FIFTH CLAIM**

4   **Unwarranted Interference With Familial Association**

5   **(U.S. Const. Amend. I; 42 U.S.C. § 1983)**

6   　　　94.　　Plaintiff BLONDELL BROWN asserts this Claim against Defendants COUNTY OF

7   ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA

8   COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-

9   WELLPATH, and DOE 1 to 20.

10   　　　95.　　The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the

11   extent relevant and as if fully set forth in this Claim.

12   　　　96.　　Plaintiff BLONDELL BROWN shared a close relationship and special bond with

13   LEONARD BROWN, her biological son, which included deep attachments, commitments, and

14   distinctively personal aspects of their lives and was typical of a close familial relationship.

15   　　　97.　　Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

16   GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA

17   FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20 caused the termination of and

18   interference with Plaintiff BLONDELL BROWN's familial relationship with LEONARD BROWN, in

19   the violation of constitutional rights protected by the First Amendment to the U.S. Constitution.

20   　　　98.　　Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-

21   WELLPATH, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved

22   reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

23   　　　99.　　Plaintiff BLONDELL BROWN was injured as a direct and proximate result of

24   Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY

25   AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC

26   MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions, entitling her to receive

27   compensatory damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY

28   SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH

SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP, and DOE 1 to 20; and punitive damages against Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiff BLONDELL BROWN prays for relief as hereunder appears.

## SIXTH CLAIM

### Failure To Summon Medical Care Or Treatment

### (Cal. Gov. Code § 845.6)

100.    Plaintiff ESTATE OF LEONARD BROWN (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

101.    The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

102.    Defendants DOE 1 to 10 knew or had reason to know that LEONARD BROWN was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of rights protected by Cal. Gov. Code § 845.6.

103.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20 maintained policies or customs of action and inaction resulting in harm, in violation of rights protected by Cal. Gov. Code § 845.6.

104.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of their employees acting within the scope of their employment, including Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

105.    Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice

28

1  resulting in great harm.

2        106.    LEONARD BROWN was injured as a direct and proximate result of Defendants

3  COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN,

4  ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL

5  GROUP-WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF

6  LEONARD BROWN to receive compensatory damages against Defendants COUNTY OF ALAMEDA,

7  ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY

8  BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH,

9  and DOE 1 to 20; and punitive damages against Defendants GREGORY AHERN, CALIFORNIA

10  FORENSIC MEDICAL GROUP, and DOE 1 to 20.

11        WHEREFORE, Plaintiff ESTATE OF LEONARD BROWN prays for relief as hereunder

12  appears.

13  **SEVENTH CLAIM**

14  **Tom Bane Civil Rights Act**

15  **(Cal. Civ. Code § 52.1)**

16        107.    Plaintiff ESTATE OF LEONARD BROWN (pursuant to Cal. Code Civ. Proc. § 377.30)

17  asserts this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S

18  OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES,

19  CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

20        108.    The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the

21  extent relevant and as if fully set forth in this Claim.

22  Deliberate Indifference

23        109.    Defendants DOE 1 to 10 intentionally refused to provide LEONARD BROWN with

24  necessary medical and/or mental health care or treatment, or refused to transfer LEONARD BROWN to

25  a mental health facility that could provide such necessary care or treatment, putting LEONARD BROWN

26  at substantial risk of suffering serious harm, and did not take reasonable available measures to abate that

27  risk, where a reasonable official in the circumstances would have appreciated the high degree of risk

28  involved, with deliberate indifference or reckless disregard of rights protected by the Eighth and/or

29

Fourteenth Amendment to the U.S. Constitution and Article I, Sections 7(a) and/or 17 of the California Constitution.

110.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20 maintained policies or customs of action and inaction and knew or should have known that law enforcement officers under their command were inadequately trained, supervised, or disciplined resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy, with deliberate indifference or reckless disregard of rights protected by the Eighth and/or Fourteenth Amendment to the U.S. Constitution and Article I, Sections 7(a) and/or 17 of the California Constitution.

<u>Rehabilitation Act & Americans with Disabilities Act</u>

111.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20 failed reasonably to accommodate LEONARD BROWN's disability, where they could have provided a reasonable accommodation, including: (a) by providing LEONARD BROWN with necessary medical and mental health care or treatment; (b) by transferring LEONARD BROWN to a medical or mental health facility that could provide necessary care or treatment; and/or (c) by classifying and housing LEONARD BROWN based on his mental impairment, where he would receive adequate and necessary medical and mental health care, with deliberate indifference or reckless disregard, with deliberate indifference or reckless disregard of rights protected by the Rehabilitation Act, 29 U.S.C. § 701, *et seq*. and Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

<u>Failure To Summon Medical Care Or Treatment</u>

112.    Defendants DOE 1 to 10 knew or had reason to know that LEONARD BROWN was in need of immediate medical care and failed to take reasonable action to summon such medical care, with deliberate indifference or reckless disregard of rights protected by Cal. Gov. Code § 845.6.

113.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA

30

1   FORENSIC MEDICAL GROUP-WELLPATH, and DOE 11 to 20 maintained policies or customs of

2   action and inaction resulting in harm, with deliberate indifference or reckless disregard of rights

3   protected by Cal. Gov. Code § 845.6.

Common Allegations

5        114.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

6   and ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES-WELLPATH, are vicariously liable,

7   through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a), 845.6, for

8   injuries proximately caused by the acts and omissions of their employees acting within the scope of their

9   employment, including Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL

10  GROUP, and DOE 1 to 20.

11       115.    Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-

12  WELLPATH, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice

13  resulting in great harm.

14       116.    LEONARD BROWN was injured as a direct and proximate result of Defendants

15  COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN,

16  ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL

17  GROUP-WELLPATH, and DOE 1 to 20's actions and inactions, entitling him to receive compensatory

18  and treble damages and civil penalties against Defendants COUNTY OF ALAMEDA, ALAMEDA

19  COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL

20  HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to

21  20; and punitive damages against Defendants GREGORY AHERN, CALIFORNIA FORENSIC

22  MEDICAL GROUP, and DOE 1 to 20.

23       WHEREFORE, Plaintiff ESTATE OF LEONARD BROWN prays for relief as hereunder

24  appears.

**EIGHTH CLAIM**

**Intentional Infliction Of Emotional Distress**

27       117.    Plaintiffs ESTATE OF LEONARD BROWN (pursuant to Cal. Code Civ. Proc. § 377.30),

28  BLONDELL BROWN, and ANGELO BOSTICH assert this Claim against Defendants COUNTY OF

31

1  ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA

2  COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-

3  WELLPATH, and DOE 1 to 20.

4     118. The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the

5  extent relevant and as if fully set forth in this Claim.

6     119. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

7  GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA

8  FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20 engaged in outrageous conduct, with

9  intent or reckless disregard of the probability that LEONARD BROWN would suffer emotional distress

10  and he did suffer severe emotional distress, including: (a) by exhibiting deliberate indifference to

11  LEONARD BROWN's need for medical and mental health care; (b) by failing reasonably to

12  accommodate LEONARD BROWN's mental impairment; (c) by failing timely to summon medical care,

13  in violation of Cal. Gov. Code § 845.6; (d) by failing to comply with Cal. Code. Regs. tit. 15 § 1027.5;

14  and/or (e) by maintaining policies or customs of action and inaction which resulted in harm to

15  LEONARD BROWN.

16     120. Defendants GREGORY AHERN and DOE 1 to 20 engaged in outrageous conduct, with

17  intent or reckless disregard of the probability that Plaintiffs BLONDELL BROWN and ANGELO

18  BOSTICH would suffer emotional distress and they did suffer severe emotional distress, including by

19  failing timely and accurately to inform of LEONARD BROWN's location, status, and condition.

20     121. Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

21  and ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES are vicariously liable, through the

22  principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a), 845.6, for injuries

23  proximately caused by the acts and omissions of their employees acting within the scope of their

24  employment, including Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL

25  GROUP-WELLPATH, and DOE 1 to 20.

26     122. Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-

27  WELLPATH, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice

28  resulting in great harm.

32

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Brown v. County of Alameda*, United States District Court, Northern District of California, Case No. _____

123.     LEONARD BROWN and Plaintiffs BLONDELL BROWN and ANGELO BOSTICH were injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF LEONARD BROWN, BLONDELL BROWN, and ANGELO BOSTICH to receive compensatory damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP, and DOE 1 to 20; and punitive damages against Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF LEONARD BROWN, BLONDELL BROWN, and ANGELO BOSTICH pray for relief as hereunder appears.

## NINTH CLAIM

### Negligence

124.     Plaintiffs ESTATE OF LEONARD BROWN (pursuant to Cal. Code Civ. Proc. § 377.30), BLONDELL BROWN, and ANGELO BOSTICH assert this Claim against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

125.     The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

126.     Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20 owed LEONARD BROWN a duty of care and breached that duty, including: (a) by exhibiting deliberate indifference to LEONARD BROWN's need for medical and mental health care; (b) by failing reasonably to accommodate LEONARD BROWN's mental impairment; (c) by failing timely to summon medical care, in violation of Cal. Gov. Code § 845.6; (d) by failing to comply with Cal. Code. Regs. tit. 15 § 1027.5; and/or (e) by

33

maintaining policies or customs of action and inaction which resulted in harm to LEONARD BROWN.

127.    Defendants GREGORY AHERN and DOE 1 to 20 owed Plaintiffs BLONDELL BROWN and ANGELO BOSTICH a duty of care and breached that duty, including by failing timely and accurately to inform of LEONARD BROWN's location, status, and condition.

128.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of their employees acting within the scope of their employment, including Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

129.    Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

130.    LEONARD BROWN and Plaintiffs BLONDELL BROWN and ANGELO BOSTICH were injured as a direct and proximate result of Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF LEONARD BROWN, BLONDELL BROWN, and ANGELO BOSTICH to receive compensatory damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20; and punitive damages against Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF LEONARD BROWN, BLONDELL BROWN, and ANGELO BOSTICH pray for relief as hereunder appears.

## TENTH CLAIM

### Wrongful Death

### (Cal. Code Civ. Proc. § 377.60)

131.    Plaintiff BLONDELL BROWN asserts this Claim against Defendants COUNTY OF

34

1  ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA

2  COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-

3  WELLPATH, and DOE 1 to 20.

4      132.    The allegations of the preceding paragraphs 1 to 71 are realleged and incorporated, to the

5  extent relevant and as if fully set forth in this Claim.

6      133.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

7  GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA

8  FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20 caused LEONARD BROWN's death

9  by wrongful act and neglect, including: (a) by exhibiting deliberate indifference to LEONARD

10  BROWN's need for medical and mental health care; (b) by failing reasonably to accommodate

11  LEONARD BROWN's mental impairment; (c) by failing timely to summon medical care, in violation of

12  Cal. Gov. Code § 845.6; (d) by failing to comply with Cal. Code. Regs. tit. 15 § 1027.5; and/or (e) by

13  maintaining policies or customs of action and inaction which resulted in harm to LEONARD BROWN.

14      134.    Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE,

15  and ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES are vicariously liable, through the

16  principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a), 845.6, for injuries

17  proximately caused by the acts and omissions of their employees acting within the scope of their

18  employment, including Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL

19  GROUP-WELLPATH, and DOE 1 to 20.

20      135.    Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP, and

21  DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

22      136.    Plaintiff BLONDELL BROWN was injured as a direct and proximate result of

23  Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY

24  AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC

25  MEDICAL GROUP-WELLPATH, and DOE 1 to 20's actions and inactions, entitling her to receive

26  compensatory damages against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY

27  SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH

28  SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20; and

punitive damages against Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP, and DOE 1 to 20.

WHEREFORE, Plaintiff BLONDELL BROWN prays for relief as hereunder appears.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ESTATE OF LEONARD BROWN, BLONDELL BROWN, and ANGELO BOSTICH seek Judgment as follows:

1.    For an award of compensatory, general, special, and nominal damages (including survival damages and wrongful death damages under federal and state law) against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20, in excess of $5,000,000, according to proof at trial;

2.    For an award of exemplary/punitive damages against Defendants GREGORY AHERN, CALIFORNIA FORENSIC MEDICAL GROUP, and DOE 1 to 20, in an amount sufficient to deter and to make an example of her, because her actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm;

3.    For funeral and/or burial expenses;

4.    For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, CALIFORNIA FORENSIC MEDICAL GROUP-WELLPATH, and DOE 1 to 20; and punitive damages against Defendants GREGORY AHERN and DOE 1 to 20, pursuant to Cal. Civ. Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE, and ALAMEDA COUNTY BEHAVIORAL HEALTH SERVICES, pursuant to Cal. Civ. Code § 818);

5.    For appropriate injunctive relief;

6.    For interest;

1       7.      For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29

2 U.S.C. § 794, 42 U.S.C. § 12205, Cal. Civ. Code § 52.1, Cal. Code Civ. Proc. § 1021.5, and any other

3 statute as may be applicable; and

4       8.      For an award of any other further relief, as the Court deems fair, just, and equitable.

5 Dated:                                  Respectfully Submitted,

*/s/ Yolanda Huang*

By: _____

Yolanda Huang
LAW OFFICES OF YOLANDA HUANG
P.O. Box 5475
Berkeley, CA 94705
Telephone: (510) 329-2140
Facsimile: (510) 580-9410

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF LEONARD BROWN
and BLONDELL BROWN

37

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF LEONARD BROWN, BLONDELL BROWN, and ANGELO BOSTICH.

Dated:                                                    Respectfully Submitted,

*/s/ Yolanda Huang*

By: _____
Yolanda Huang
LAW OFFICES OF YOLANDA HUANG
P.O. Box 5475
Berkeley, CA 94705
Telephone: (510) 329-2140
Facsimile: (510) 580-9410

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF LEONARD BROWN
and BLONDELL BROWN

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Brown v. County of Alameda*, United States District Court, Northern District of California, Case No. _____

ATTACHMENTS
to
COMPLAINT

ESTATE OF LEONARD BROWN
v.
COUNTY OF ALAMEDA, et al.





In Loving Memory Of

Leonard Charles Brown, Jr.

Sunrise: December 15, 1985- Sunset: March 15, 2022

Services Held

Harris Funeral Home

1331 San Pablo Ave

Berkeley, CA 94702



Letter to my son,

I love you, you are forever in my heart, I will miss you, so much. I am so hurt; I miss us having breakfast and having coffee while we would crack jokes and laugh with one another. Rest in Peace

**CERTIFICATION OF VITAL RECORD**

OFFICE OF CLERK-RECORDER

# COUNTY OF ALAMEDA

OAKLAND, CALIFORNIA

**AFFIDAVIT TO AMEND A RECORD**
NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS

3052022083544
STATE FILE NUMBER

3202201002832
LOCAL REGISTRATION NUMBER

1.1

☐ BIRTH  ☒ DEATH  ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

| PART I | INFORMATION TO LOCATE RECORD | | |
|---|---|---|---|

| INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 1A. NAME—FIRST<br>LEONARD | 1B. MIDDLE<br>CHARLES | 1C. LAST<br>BROWN, JR |
|---|---|---|---|
| | 2. SEX<br>M | 3. DATE OF EVENT—MM/DD/CCYY<br>03/15/2022 | 4. CITY OF EVENT<br>PLEASANTON | 5. COUNTY OF EVENT<br>ALAMEDA |
| | 6. FULL NAME OF FATHER/PARENT AS STATED ON ORIGINAL RECORD<br>LEONARD CHARLES BROWN SR | | 7. FULL NAME OF MOTHER/PARENT AS STATED ON ORIGINAL RECORD<br>BLONDELL RATCLIFF |

| PART II | STATEMENT OF CORRECTIONS TO BIRTH, DEATH, OR FETAL DEATH RECORD | |
|---|---|---|

| | 8. ITEM NUMBER TO BE CORRECTED | 9. INCORRECT INFORMATION THAT APPEARS ON ORIGINAL RECORD | 10. CORRECTED INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| LIST ONE ITEM PER LINE | 40 | RESIDENCE OF ANGELO BOSTIC 9309 CHERRY ST, OAKLAND, CA 94603 | RESIDENCE OF ANGELO BOSTIC 9303 CHERRY ST, OAKLAND, CA 94603 |

2 OF 2

| REASON FOR CORRECTION | 11. PLACE OF DISPOSITION ADDRESS CORRECTION |
|---|---|

| AFFIDAVITS AND SIGNATURES | We, the undersigned, hereby certify under penalty of perjury that we have personal knowledge of the above facts and that the information given above is true and correct. | | |
|---|---|---|---|
| TWO PERSONS MUST SIGN THIS FORM TO CORRECT A BIRTH, DEATH, OR FETAL DEATH RECORD | 12A. SIGNATURE OF FIRST PERSON<br>▶ AMANDA DAHL | 12B. PRINTED NAME<br>AMANDA DAHL | 12C. TITLE/RELATIONSHIP TO PERSON IN PART I<br>FUNERAL ARRANGER |
| | 12D. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP)<br>21168 REDWOOD ROAD, CASTRO VALLEY, CA 94546 | | 12E. DATE SIGNED—MM/DD/CCYY<br>04/07/2022 |
| | 13A. SIGNATURE OF SECOND PERSON<br>▶ BRENDA BERNAL | 13B. PRINTED NAME<br>BRENDA BERNAL | 13C. TITLE/RELATIONSHIP TO PERSON IN PART I<br>FUNERAL HOME STAFF LEVEL |
| | 13D. ADDRESS (STREET and NUMBER, CITY, STATE, ZIP)<br>2230 W. CHAPMAN AVENUE, ORANGE, CA 92868 | | 13E. DATE SIGNED—MM/DD/CCYY<br>04/07/2022 |
| STATE/LOCAL REGISTRAR USE ONLY | 14. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR<br>▶ CDPH-VR | | 15. DATE ACCEPTED FOR REGISTRATION<br>04/08/2022 |

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS

FORM VS 24e (REV. 1/08)

1.1

CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF ALAMEDA

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Alameda County Clerk-Recorder.

JUN 0 8 2022

DATE ISSUED

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the County Clerk-Recorder.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



* 0 0 0 3 1 5 9 9 8 *

Melissa Wilk
Melissa Wilk
COUNTY CLERK-RECORDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ESTATE OF LEONARD BROWN, et al.,

                  Plaintiffs,

vs.

COUNTY OF ALAMEDA, et al.,

                  Defendants.

Case No.

**DECLARATION OF BLONDELL BROWN RE: CAL. CODE CIV. PROC. § 377.32**

I, Blondell Brown (nee Ratcliff), do declare and say:

1.     I submit the following declaration concerning my status as the successor-in-interest of Leonard Brown, pursuant to Cal. Code Civ. Proc. § 377.32.

2.     Leonard Brown was born on December 15, 1985, in the County of Alameda, California.

3.     No proceeding is now pending in California for administration of the estate of Leonard Brown.

4.     I am the successor-in-interest of Leonard Brown (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to his interest in the action or proceeding. I am the biological and natural parent of Leonard Brown.

5.     No other person has a superior right to commence the action or proceeding or to be substituted for Leonard Brown in the pending action or proceeding.

6.     A true and correct copy of the certified death certificate of Leonard Brown is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 3, 2022, in Oakland, California.

_____
Blondell Brown Ratcliff